**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUKE GRAGLIA, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CARGILL, INC., | |
| Defendant. | |

Plaintiff Luke Graglia ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Cargill, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant formulates, manufactures, advertises, and sells Truvia Sweet Complete Granulated All-Purpose Monk Fruit Sweetener (the "Products") throughout the United States, including in New York.

2. Defendant represents to consumers through its packaging that the Products are primarily made from monk fruit and that the Products contain "NO ARTIFICIAL SWEETENERS."

3. Unbeknownst to consumers, however, Defendant's claims are false on both fronts because the Products are mostly made from erythritol, an artificial sweetener.

4. Plaintiff has purchased the Products. Now, on behalf of himself and all others similarly situated, he asserts claims for violations of New York General Business Law §§ 349 and 350, and for breach of express warranty.

1

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6.      This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8.      Plaintiff Luke Graglia is a citizen of New York who resides in Brooklyn, New York.  Mr. Graglia has purchased the Products for himself numerous times during the applicable statute of limitations.  For example, in or around December 2024, he purchased Truvia Sweet Complete Granulated All-Purpose Monk Fruit Sweetener from a Food Bazaar in Brooklyn for approximately $8.00.  In purchasing the Products, Mr. Graglia relied on Defendant's false, misleading, and deceptive marketing of the Products as being made primarily from monk fruit and without artificial sweeteners.  Had Mr. Graglia known that Defendant's representations were false and misleading, he would not have purchased the Products or would have only been willing to purchase the Products at a lesser price.

9.      Defendant Cargill, Inc. is organized under the laws of Delaware with its principal place of business located in Minnetonka, Minnesota.  Defendant formulates, advertises, manufactures, and/or sells the Products throughout New York and the United States.

2

## GENERAL ALLEGATIONS

10.     Defendant's labeling sends a clear message to consumers that the Products are primarily made from monk fruit and that the Products contain "NO ARTIFICIAL SWEETENERS":



11.     Defendant prominently advertises that the Products are made from monk fruit because monk fruit is widely known to have numerous health benefits.  It is a zero-calorie, plant-based sugar alternative naturally packed with antioxidant compounds called mogrosides.  In addition, monk fruit has anti-inflammatory properties.

12.     Likewise, Defendant claims that the Products do not contain artificial sweeteners in an effort to capitalize on the growing market for natural products.  Health-conscious consumers are willing to pay a price premium for products labeled and advertised as natural, or with natural ingredients, because they believe that such products are safer and/or healthier to consume.

13.     But, unfortunately for consumers, the Defendant's representations about the products are false.

14.     On food labels, ingredients are listed in descending order by weight, meaning the ingredients used in the largest amounts are listed first, followed by ingredients used in smaller amounts.

15.     Here, while the packaging displays the word "monk fruit" is large prominent lettering, only a small percentage of the product is made from monk fruit.  Instead, the first ingredient listed in the Products' ingredient list is erythritol.  The second ingredient is chicory root fiber and that last ingredient is monk fruit extract.

16.     Erythritol does not have the health benefits of monk fruit.  Recent research links the sugar alcohol erythritol to a significantly increased risk of blood clots, heart attacks, and strokes.  In addition, research demonstrates that erythritol can cause cellular (oxidative) stress in brain cells and reduce the production of nitric oxide, a compound needed to keep blood vessels healthy and dilated.  Unlike monk fruit, erythritol is known to cause digestive discomfort

4

because it is absorbed by the small intestine and ferments in the colon.  The result is that ingestion of erythritol can cause bloating, gas, stomach cramping and diarrhea.  Finally, erythritol lacks the antioxidants found in monk fruit and is not known to act as an anti-inflammatory agent.

17.     All erythritol in packaged food items, including the Products, is artificial.  The process of manufacturing erythritol starts with selecting a carbohydrate-rich feedstock, often derived from GMO corn or wheat starch. The starch is extracted and purified to serve as raw material for fermentation.  The purified starch is hydrolyzed into simple sugars (glucose and/or maltose) through enzymatic or acid hydrolysis.  This step is crucial, as it provides the fermentable sugars necessary for the subsequent fermentation process.  The resulting sugar solution serves as the fermentation medium.  The fermentation process is carried out by adding a specific strain of yeast, usually a genetically modified strain of Moniliella pollinis or Trichosporonoides megachliensis, to the sugar solution. These yeast strains have been engineered to efficiently convert the sugars into erythritol while minimizing the production of undesirable byproducts.  The fermentation is typically conducted in large fermentation tanks under controlled conditions of temperature, pH, and oxygen levels.  After the fermentation is complete, the broth, along with other byproducts and impurities, undergoes a series of purification steps to isolate and purify the erythritol crystals.  Common purification techniques include filtration, ion exchange chromatography, crystallization, and drying.  These processes help remove residual sugars, organic acids, and other impurities, resulting in a higher-purity erythritol product.  The purified erythritol crystals are then dried to remove any remaining moisture and achieve the desired moisture content for the final product.  Once dried, the erythritol is typically milled into a fine powder or granulated form and then packaged.

18.    A flow chart of the manufacturing process for erythritol appears below:



19.     Defendant has profited enormously from its false and misleading representations. The purpose of this action is to require Defendant to change its labeling claims and to provide consumers with monetary relief for its deceptive and misleading product claims.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff seeks to represent a class defined as all persons in New York who, during the maximum period of time permitted by law, purchased the Products for personal, family, or household consumption, and not for resale (the "Class").

21.     **Numerosity Fed. R. Civ. P. 23(a)(1).**  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

22.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)).** There is a well-defined community of interest in the questions of law and fact involved in this case.  Common questions of law and fact that exist as to all Class members and predominate over questions affecting only individual Class members include, but are not limited to:

(a) whether Defendant marketed, advertised and/or labeled the products as being primarily made from monk fruit;

(b) whether Defendant marketed, advertised and/or labeled the products as being made with "NO ARTIFICIAL SWEETENERS";

(c) whether the Products are primarily made from erythritol;

(d) whether the erythritol is artificial;

(e) whether Defendant's marketing, advertising and/or labeling are deceptive and misleading; and

(f) whether Plaintiff and members of the Class have suffered damages as a result of Defendant's actions, and the amount thereof.

23. **Typicality (Fed. R. Civ. P. 23(a)(3)).** The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

24. **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

25. **Superiority (Fed. R. Civ. P. 23(b)(3)).** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Even if every member of the Class could afford to pursue individual litigation, the court system could not. Individualized litigation would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also increase the delay and expense to all parties and would present the potential for varying, inconsistent, or contradictory judgments—magnifying the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. In contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues would ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiff anticipates no difficulty in the

8

management of this action as a class action.

## CAUSES OF ACTION
## COUNT I

**Violation of the New York General Business Law § 349**
**(On behalf of Plaintiff and the Class)**

26.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

27.     Plaintiff brings this cause of action on behalf of himself and members of the Class against Defendant.

28.     Plaintiff and Class members are "persons" within the meaning of the GBL § 49(h).

29.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

30.     Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

31.     Defendant made false and misleading statements by marketing the Products as being made primarily from monk fruit and as containing "NO ARTICFICIAL SWEETENERS" when, in fact, the Products are made primarily from erythritol, an artificial sweetener.

32.     In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

33.     Defendant's deceptive acts or practices were materially misleading.  Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

34.     Plaintiff and the Class members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

35. Defendant's actions set forth above occurred in the conduct of trade or commerce.

36. The foregoing deceptive acts and practices were directed at consumers.

37. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because they fundamentally misrepresent the production and quality of the Products.

38. Plaintiff and Class members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and Class members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

39. On behalf of himself and other members of the Class, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II

### Violation of the New York General Business Law § 350
### (On behalf of Plaintiff and the Class)

40. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

41. Plaintiff brings this cause of action on behalf of himself and members of the Class against Defendant.

42.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

43.    Defendant's labeling and advertisement of the Products was false and misleading in a material way.  Specifically, Defendant marketed the Products as being made primarily from monk fruit and as containing "NO ARTICFICIAL SWEETENERS" when, in fact, the Products are made primarily from erythritol, an artificial sweetener.

44.    This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

45.    This misrepresentation has resulted in consumer injury or harm to the public interest.

46.    As a result of this misrepresentation, Plaintiff and Class members have suffered economic injury because: (i) they would not have purchased the Product had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein.  As a result, Plaintiff and Class members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

47.    By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and Class members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

11

(a)   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)   For prejudgment interest on all amounts awarded;

(f)   For an order of restitution and all other forms of equitable monetary relief;

(g)   For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h)   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: June 1, 2026                    **ARISOHN LLC**

By:  */s/ Joshua D. Arisohn*
        Joshua D. Arisohn

Joshua D. Arisohn
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

*Attorney for Plaintiff*

12